UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 03-91-JMH

UNITED STATES OF AMERICA, PLAINTIFF,

V. **MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

JAMES RAY COPE, DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

## I. INTRODUCTION and BACKGROUND

The Defendant, James Ray Cope, brings this action pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. [R. 208]. For the reasons discussed below, the Court will recommend that the Defendant's motion be denied. The following procedural and factual summary is based on the Sixth Circuit's opinion rendered following the Defendant's appeal. U.S. v. Cope, 283 Fed. Appx. 384 (6th Cir. 2008).

Mr. Cope's troubles began when, in 2002, grand juries indicted him in two separate cases for committing several marijuana and methamphetamine related offenses. Cope, 283 Fed. Appx. at 386. While in pretrial detention, Cope approached a fellow inmate, David Smallwood, and offered to pay him $10,000 to murder the Assistant United States Attorney ("AUSA") who was investigating and prosecuting the drug cases. Id. Smallwood told his wife about Cope's request, and shortly thereafter, Smallwood was contacted by the FBI. Id. Smallwood agreed to wear a wire, which allowed FBI agents to record conversations between Cope and Smallwood on August 5, 8, and 12, 2002. Id. The recorded conversations revealed that Cope was willing to pay Smallwood

or anyone else to kill the AUSA and that Cope had learned about a toxic substance known as ricin with which he hoped to poison the AUSA. Id.

Based on this information, in August of 2003, a federal grand jury returned an indictment charging the Defendant with one count of soliciting another person to murder a federal law enforcement officer in violation of 18 U.S.C. § 373 and three counts of threatening to murder the same a law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B). [R. 1]. Following a two-day jury trial, the Defendant was convicted of the solicitation charge and two of the threat charges. [R. 170].

At sentencing, the Court determined that Cope was a career offender under the sentencing guidelines, resulting in a guideline range of 360 months to life. The Court sentenced Cope to the maximum 20 years imprisonment on the solicitation count and 10 years on each of the threat counts, all to be served concurrently for a total of 20 years. [R. 187]. He appealed his conviction and sentence, and the Sixth Circuit affirmed all of his convictions and his sentence on the solicitation charge, but vacated his sentence on the threat charges and remanded the case for re-sentencing. Cope, 283 Fed. Appx. at 386. On appeal, Cope had argued that the Court erred in sentencing him to ten years' imprisonment on each of the two threat-counts. The Sixth Circuit agreed, finding that a 5-year statutory maximum applied. Id. at 391. Following remand, Cope was sentenced to 5 years imprisonment on each threat count, but his total term of imprisonment remained 20 years. [R. 206].

## II. CLAIMS ASSERTED

In his petition for relief under Section 2255, Cope argues that he was prejudiced by numerous errors committed by his trial counsel. Cope raises the following claims of ineffective assistance of counsel:

2

1. Trial counsel failed to object to the Court granting a request by the jury to listen to CD recordings in the jury room during deliberations, including portions of the recordings not admitted into evidence;
2. Trial counsel failed to object when the Court answered a question by the jury as to whether Count 3 of the indictment referred to the AUSA as the law enforcement officer who was threatened;
3. Trial counsel failed to request a limiting instruction to the jury concerning certain statements by the prosecutor regarding past statements of the Defendant;
4. Trial counsel failed to object to the government's use of false statements;
5. Trial counsel failed to object to the transcription of recorded statements;
6. Trial counsel failed to investigate and interview two inmate witnesses;
7. Trial counsel failed to raise the Defendant's antisocial disorder as a defense;
8. Trial counsel failed to move for the suppression of the recordings;
9. Trial counsel failed to object to government's prejudicial questioning of a witness;
10. Trial counsel failed to raise prosecutorial misconduct; and
11. A conflict of interest existed between the Defendant and his trial counsel because his attorney's law firm had previously represented the government's principal witness against Cope.

[R. 208].

In order to prevail upon an ineffective assistance of counsel claim, the defendant must satisfy the two-prong test set forth by the Supreme Court in Strickland v. Washington. Under the first prong, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). Second, he must demonstrate that the deficient performance prejudiced the defense. Id. at 687; see also Hill v. Lockhart, 474 U.S. 52, 58 (1985). The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential. ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

3

## III. ANALYSIS

Cope's claims of ineffective assistance of counsel are without merit and should be dismissed. The basis of Cope's first claim is that the Court erroneously allowed the jury to listen to audio recordings that had not been entered into evidence during the trial. The transcript, however, reveals that the recordings the jurors were allowed to hear had in fact been admitted into evidence:

> Court: They [the jury] apparently want the tapes, which I think the CDs we have. Do we have a CD player anywhere around is the question?
> Clerk: I think we just found a little boom box.
> Court: Well, if we have a boom box that will play those, that would be wonderful. You can give them that. The time line chart is not evidence, and so we can't give them that. So I'll respond to the jury by saying, here are the tapes, and I'll send them both CDs that were offered into evidence, but the time line chart is not evidence.

[R. 196 at 208]. During deliberations, the jury is entitled to listen to audio recordings that have been introduced into evidence. U.S. v. Rose, 522 F.3d 710, 714-15 (6th Cir. 2008). Cope argues that only portions of the recordings on the CDs were actually admitted into evidence and that it was error to allow the jury to listen to the entire recording during deliberations. The record, however, reflects that both CDs were put into evidence, not just excerpts. [Rs. 164; 194 at 18, 40; 196 at 172]. Accordingly, the Court did not err and Cope's attorney did not act objectively unreasonable in failing to object.

Cope next argues that his attorney performed ineffectively by failing to object when the Court answered a question posed by the jury. During deliberations, the jury wrote a note asking the Court whether the "federal law enforcement officer" described in Count 3 referred to Roger West, the AUSA who had prosecuted Cope for the drug-related offenses. [R. 196 at 210]. The Court answered the jury's question affirmatively. Cope's attorney did in fact object to the Court's answer, [Id. at 212] but whether Cope's attorney did or did not object is immaterial since Count 3 was

4

ultimately dismissed upon a motion by the United States anyway. [R. 172]. Cope was not prejudiced by the alleged error, therefore his claim fails under the second prong of the Strickland test.

Cope, however, argues that the Court's answer also prejudiced him with respect to the other counts for which he was convicted. Cope alleges that the Court impermissibly amended the indictment by identifying AUSA Roger West as the target of Cope's threats when Mr. West was never identified to the grand jury that indicted Cope. The indictment, however, clearly states that the identity of the law enforcement agent whom Cope threatened, and solicited the murder of, was in fact known to the grand jury. [R. 1]. Cope nevertheless argues that once it became clear that the jury could not identify the target of the threat detailed in Count 3, he should have been acquitted on all counts. There is no merit to Cope's argument. The jury had no difficulty in identifying AUSA West as the law enforcement agent that Cope sought to have murdered and threatened in Counts 1, 2 and 4. The testimony and tape recorded conversations introduced at trial clearly support such a conclusion. [See R. 195, *Testimony of Roger West* at 56-73; R. 194, *Testimony of David Smallwood* at 33-40; R. 196, *Testimony of Robert Alexander* at 6-10]. If the Court's answer to the jury's question was in error, that error was only with respect to Count 3, which was ultimately dismissed. In any event, the record reflects that Cope's attorney did object to the Court's answer, [R. 196 at 212] and therefore, his claim of ineffective assistance of counsel fails under the first prong of Strickland.

Cope's third claim is that his attorney performed ineffectively by failing to request a limiting instruction to the jury concerning evidence that Cope had talked about killing people in the past. When evidence of other crimes, wrongs or acts is admitted under Federal Rule of Evidence 404(b), the Court must provide a limiting instruction to the jury. U.S. v. Merriweather, 78 F.3d 1070, 1077

5

(6th Cir. 1996). As the United States correctly points out in its response, however, no Rule 404(b) evidence was ever introduced in this matter, and thus no limiting instruction was warranted.

      Rule 404(b) states that

      [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ... .

The only evidence introduced in this case that would arguably fall under Rule 404(b) was the testimony of Ronald Gay, a former detective with the Kentucky State Police. [R. 146 at 50-53]. Mr. Gay testified that he investigated a homicide on the Kentucky River in September 1987. He stated that two people on a canoe trip were ambushed by an assailant who shot and killed one of the individuals and wounded the other. [Id. at 52]. As part of his investigation, Mr. Gay interviewed Cope, but Cope was never arrested or prosecuted for the shootings. [Id. at 52-53].

      Cope's attorney objected to Mr. Gay's testimony on the basis that it was 404(b) evidence and the prosecution had failed to provide the Defendant with advance notice as required by the Rule. [Id. at 50-51]. The Court, however, overruled any objection noting that Mr. Gay's testimony was not evidence of other crimes, wrongs, or acts, but rather, was used to corroborate the testimony of other witnesses who claimed that Cope had told them he shot two people in a canoe near his property. In attempting to convince Smallwood and Alexander that he was serious about murdering the AUSA, Cope told them that he had shot two people in a canoe near his marijuana plants. Cope also told them that he believed one of the victims died, but the other was wounded. [Rs. 195 at 115-16; 196 at 8]. The testimony of Mr. Gay was not introduced as 404(b) evidence, but rather to establish that a crime had in fact occurred at the location and approximate time Cope described. Because no Rule 404(b) evidence was ever introduced, Cope's attorney did not act unreasonably by failing to request

6

a limiting instruction.

In his fourth claim, Cope argues that his attorney performed ineffectively by failing to object to the prosecutor's use of false statements. In Cope's mind, false evidence was introduced at numerous points throughout the trial. First, he claims that the prosecutor knowingly used false evidence by eliciting testimony from Smallwood and Alexander that Cope had told them he shot the two individuals in the canoe near his property. Cope believes this is false evidence because, in his closing argument, the prosecutor admitted that Cope had never been charged or convicted in connection with those shootings. The fact is, however, that those statements were not introduced to prove that Cope had shot anyone, but rather to show that his interest in having the AUSA murdered was serious. Smallwood and Alexander testified as to what Cope told them, and there is no evidence that the prosecution had reason to believe Smallwood and Alexander were being untruthful. Furthermore, Cope's attorney unsuccessfully sought to suppress these statements by filing a pre-trial motion *in limine*. [R. 28]. On appeal, Cope's attorney again argued that the Court impermissibly allowed the government to introduce evidence regarding the 1987 canoe shootings. Cope, 283 Fed. Appx. at 389. Issues raised and rejected on direct appeal cannot be relitigated in a collateral proceeding pursuant to Section 2255 absent an intervening change in the law or other exceptional circumstances. Jones v. U.S., 178 F.3d 790, 795 (6th Cir. 1999). Cope has not argued any intervening change in law or exceptional circumstances, therefore he cannot relitigate the admissibility of the statements regarding the 1987 shooting under the guise of an ineffective assistance of counsel claim.

Cope also alleges that other false evidence was admitted at trial. For example, he points out that Smallwood testified that Cope had told him he was involved in the disappearance of three FBI

7

agents. [R. 194 at 36]. Cope argues that the prosecutor knew that such an incident never occurred and was never investigated, but introduced this testimony anyway. Again, however, for the same reason Smallwood's statements regarding the 1987 shooting were admissible, these same statements were allowed for the purpose of demonstrating that Cope was serious when he solicited the murder of the AUSA. Accordingly, Cope's attorney did not act unreasonably in failing to object to this statement.

The next allegedly false evidence introduced by the prosecution involves statements made by Cope to others about burning down his mobile home. The recorded conversations between Cope and Smallwood reveal that he told Smallwood he had set fire to his home in order to collect the insurance proceeds. [R. 194 at 34-35]. In regard to this part of their conversation, Smallwood testified that Cope "said that him and his girlfriend had set it up to burn it to collect insurance off of it." [Id. at 35]. Cope claims that the prosecutor knew this was a false statement because Cope had been incarcerated at the time and thus could not have burned down his home. The truth of the statements made by Cope, however, is immaterial. Like his statements concerning the 1987 shooting and the disappearance of the FBI agents, his claim that he burned his trailer to collect the insurance proceeds was made for the purpose of bolstering his credibility while soliciting fellow inmates to murder the AUSA. "To obtain a conviction for solicitation, the government was required to prove by 'strongly corroborative' circumstances that Cope intended that another person 'engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against ... the person of another.' 18 U.S.C. § 373(a)." Cope, 283 Fed. Appx. at 390. In mentioning that he had burned his trailer and collected the insurance proceeds, Cope was demonstrating that he actually possessed the funds he was willing to pay to have the AUSA

8

murdered. Id. Accordingly, his attorney's failure to object to the introduction of these statements was not unreasonable and did not prejudice Cope's defense. Strickland, 466 U.S. at 687.

Cope's fifth claim is that his attorney performed ineffectively by failing to object to the transcription of the recorded conversations between himself and Smallwood. As pointed out by the United States, however, Cope's attorney was diligent in his efforts to ensure that the transcripts and recordings were accurate. For example, counsel filed a pretrial motion, which was granted, to compel the government to produce all of the recorded conversations between Cope and Smallwood. [Rs. 37, 38]. Counsel then moved for funds to retain an expert to review those recordings and prepare transcripts for the defense. [R. 68]. During trial, Cope's attorney played and introduced into evidence the composite recordings that had been prepared by the defense expert. [R. 194 at 17-28]. In cross-examining Smallwood, Cope's attorney frequently played excerpts of the recordings and questioned Smallwood about the unclear and ambiguous nature of some of the recorded statements. [Id. at 17-28, 41-44]. Cope has failed to provide any proof that his attorney's performance in this regard was anything but reasonable.

Cope next argues that trial counsel failed to investigate and interview two inmate witnesses: Jeff Yates and Charlie Puckett. Cope alleges that Smallwood mentioned these two inmates as potential candidates for carrying out the murder of the AUSA. Cope states that he never spoke to either one of these inmates about a murder-for-hire scheme and argues that his attorney should have interviewed these individuals and called them as witnesses. The Court has reviewed the trial transcripts, however, and can find no instance of Smallwood mentioning either individual.

Counsel is obligated "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Kimmelman v. Morrison, 477 U.S. 365, 384

9

(1986) (quoting Strickland, 466 U.S. at 691). The Sixth Circuit has "held that the failure by counsel to either investigate or interview promising witnesses constitutes negligence, not trial strategy." Cathron v. Jones, 77 Fed. Appx. 735, 841 (6th Cir. 2003) (citing Workman v. Tate, 957 F.2d 1339, 1345 (6th Cir.1992)). Defense counsel, however, is generally under no duty to "call or even interview a witness whose testimony would not have exculpated the defendant." Millender v. Adams, 187 F.Supp.2d 852, 877 (E.D. Mich. 2002), *aff'd*, 376 F.3d 520 (6th Cir. 2004), *cert. denied*, 544 U.S. 921 (2005). Based on Cope's allegations, these two witnesses would have testified that Cope never solicited them to murder AUSA West. Cope has failed to demonstrate how such testimony would have exculpated him or had any effect whatsoever on the outcome of his trial. This claim fails under both prongs of the Stickland test.

Cope's seventh claim is that his attorney should have raised Cope's antisocial disorder as a defense. According to Cope, this condition causes him to blurt out things he does not mean when upset. At least three mental evaluations appear to have been performed on Mr. Cope. On April 26, 2004, the Court ordered that a mental evaluation be completed for the Defendant. [Rs. 68, 69]. An evaluation report was returned to the Court on January 18, 2005, after which, a competency hearing was held and Cope was determined to be competent to stand trial and assist in his defense. [Rs. 83, 84]. Following the competency hearing, Cope's attorney requested to have a further independent evaluation performed. [R. 86]. This request was granted, [R. 87] and a second competency hearing was held on June 20, 2005. [R. 97]. Again, the Court found Cope competent to stand trial and assist in his defense. A third evaluation, the report from which is attached to Cope's petition as an exhibit, was performed in January 2003 upon order of the District Judge presiding over Cope's drug-related prosecution. Cope argues that this report should have provided his attorney with a basis for raising

Cope's antisocial disorder as a defense.

The Court has reviewed the forensic report from Cope's mental evaluation at FMC Butner. [R. 208, Attach. 10]. Cope has not cited, and the Court cannot find, anything in the report suggesting that Cope's Antisocial Personality Disorder provides a defense to the charges in the indictment. As a *pro se* litigant, Cope's petition is entitled to liberal construction. See Franklin v. Rose, 765 F.2d 82, 84 (6th Cir. 1985) (per curiam). However, Cope has failed to factually develop this argument, or provide any legal authority in support thereof. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Johnson, 440 F.3d 832, 846 (6th Cir. 2006); see also United States v. Hall, 549 F.3d 1033, 1042 (6th Cir. 2008); Morris v. U.S., 1:09-cv-229, 2010 WL 2854269 (W.D. Mich. Jul. 19, 2010).

The eighth claim asserts that Cope's attorney was ineffective for failing to move for the suppression of the recorded conversations. It appears that Cope believes his attorney should have moved to suppress the recordings on the grounds that the method by which they were obtained violated his constitutional rights. Cope argues that the government violated his 5th and 6th Amendment rights by using Smallwood as an informant and sending him into Cope's housing unit to manipulate and coerce incriminating statements from him. "Law enforcement officials have a duty to investigate new or additional crimes that an indicted and represented defendant may have committed." U.S. v. Ford, 176 F.3d 376, 379 (6th Cir. 1999) (citing Maine v. Moulton, 474 U.S. 159, 180 (1985)). In this case, Cope was in pretrial custody facing multiple drug-related charges when he first spoke to Smallwood about having the AUSA killed. Smallwood relayed these conversations to law enforcement officers who began investigating Cope. "[T]he Supreme Court

11

has clearly established that law enforcement officials may question an indicted defendant who has invoked his right to counsel if the questioning relates to offenses other than those that form the basis of his/her indictment." Id. at 380. This is exactly what the FBI did by sending Smallwood into Cope's housing unit with a wire.

> [T]he fact that law enforcement officials arranged for an informant to converse with an indicted defendant about offenses other than those for which the defendant had been indicted is not unlawful. See Terzado-Madruga, 897 F.2d at 1111-12. Thus, if an informant "deliberately elicits" incriminating statements relating to the charged offense, the defendant is entitled to suppression of those statements in the trial on the charged offense, but the Sixth Amendment raises no bar to the initiation of the interview itself or to the use of any statements that incriminate the defendant on uncharged offenses.

Id. Accordingly, there was no constitutional basis to suppress the recorded statements and Cope's attorney did not perform unreasonably in failing to do so.

Cope's ninth claim relates to the failure of his attorney to object to the prosecution's "prejudicial" questioning of a defense witness. Janice Bishop, Cope's sister, testified on direct examination that "everybody in our county knows him [Cope] as a real good hearted person" who "would do anything for you" and that he has "a heart as big as Texas." [R. 196 at 97-98]. She also testified that although Cope "had some wild streaks in him, ... nobody's afraid of him in our county." [Id. at 98]. Bishop's testimony was related to Cope's character and reputation, and therefore, on cross-examination, the prosecution was allowed to inquire "into relevant specific instances of conduct." Fed. R. Evid. 405(a). On cross-examination, the prosecutor asked Bishop if she knew anything about an incident where it was alleged that Cope tried to burn a mobile home inhabited by four people. [R. 196 at 102]. She was also asked if she knew of an incident where Cope allegedly fired 22 rounds into an occupied home. [Id. at 102-03]. Finally, she was asked if she knew anything about Cope being charged with first degree assault and terroristic threatening. [Id. at 103]. In

12

accordance with Rule 405, the prosecution simply accepted Ms. Bishop's answers and did not seek to introduce any evidence of these specific instances.

Cope argues that the prosecution's questions about specific conduct were inappropriate because the character traits that Bishop testified to were unrelated to peacefulness.[1] Bishop, however, testified that people in the community were not afraid of Cope, and the specific instances that the prosecution asked about were therefore highly relevant to that reputation testimony. While the prosecution's questions, and Ms. Bishop's answers, may have prejudiced Cope, the prosecution was undoubtedly permitted to ask them. By placing his sister on the stand to testify about his character and reputation, Cope opened her to the possibility of being questioned about specific relevant instances. Any objection to this line of questioning would have been fruitless, thus the failure of Cope's attorney to object was neither unreasonable, nor did it prejudice the defense.

Cope also claims that his attorney was ineffective for failing to raise prosecutorial misconduct. Cope alleges that prosecutorial misconduct occurred at a number of points throughout his trial. First, he alleges that Gina Dulin, a government witness, improperly testified about the good character of Smallwood. Cope believes the prosecutor acted improperly by using Dulin as a character witness and asking her about Smallwood's trustee status within the jail. He argues that his attorney performed ineffectively by failing to object to this line of questioning. The prosecutor's questions about Smallwood's character and trustee status, however, were actually prompted by the questions asked by Cope's attorney on cross-examination. On cross, Cope's attorney asked Dulin

---

[1] Cope also cites Michelson v. U.S., 335 U.S. 469 (1948), claiming that the cross-examination of Bishop was in error because the prosecutor used the phrasing "did you know ... ?" when asking the witness about relevant conduct. This argument is without merit because Rule 405, enacted after Michelson, provides the methods by which character evidence may be proven and challenged. See Fed. R. Evid. 405, Adv. Comm. Notes; U.S. v. Scholl, 166 F.3d 964, 974 (9th Cir. 1999).

about the tasks a trustee like Smallwood would perform at the jail and the benefits they obtained as a result. [R. 195 at 82-83]. The purpose of these questions was to demonstrate that Smallwood had a motive to help law enforcement obtain evidence against Cope and that such a motive diminished his credibility. Because Cope's attorney asked Dulin about Smallwood's trustee status, the questions asked by the prosecutor were properly within the scope of re-direct examination, and Cope's attorney's failure to object was not unreasonable.

Cope next argues that Detective Whitehead, another government witness, lied about Smallwood not being offered anything in exchange for his cooperation. In response, defense counsel attempted to introduce a form that was completed during one of Whitehead's interviews with Smallwood. [R. 195 at 100]. This form, an FD-302, was reviewed by the Court but ultimately rejected because Smallwood never adopted the form as his own statements. [Id. at 100-02]. Cope's attorney clearly made his best effort to impeach the testimony of Detective Whitehead and it is unclear how his performance in this regard could be interpreted as ineffective.

Cope also argues that the prosecutor knowingly allowed Smallwood and Alexander to lie during their testimony. Again, however, it is unclear how this allegation raises an ineffective assistance of counsel claim. Cope has provided no evidence suggesting that the prosecutor intentionally elicited false testimony from either witness, and the record reveals that his attorney aggressively cross-examined both witnesses in an attempt to damage their credibility. [Rs. 194 at 5-31; 196 at 12-26]. There is simply no merit to Cope's ineffective assistance of counsel claim.

Finally, Cope argues that defense counsel failed to object to the prosecutor's closing argument in which he stated his opinions concerning witness credibility and whether Cope's threats and solicitations were serious. The Sixth Circuit "has been reluctant to grant habeas petitions on

14

improper prosecutorial statements at closing argument." Wilson v. Mitchell, 250 F.3d 388, 399 (6th Cir. 2001). In closing arguments, it is improper for the prosecutor to vouch for a witness's credibility. Id. "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating personal belief in a witness' credibility ... ." Taylor v. United States, 985 F.2d 844, 846 (6th Cir. 1993). A prosecuting attorney may not offer any "improper suggestions, insinuations, and, especially, assertions of personal knowledge ... ." Berger v. United States, 295 U.S. 78, 88 (1935). The Court has reviewed the transcript of the prosecutor's closing statements and finds that his statements fell within the scope of allowable prosecutorial argument. The prosecutor did not support witness credibility by stating his own beliefs, but rather argued based on evidence in the record. Such argument does not constitute misconduct, and therefore, defense counsel's failure to object was not unreasonable.

Cope's eleventh and final claim alleges that his attorney rendered ineffective assistance due to a conflict of interest. About a year prior to Cope's prosecution in this matter, his attorney's law firm had represented Smallwood in another case. In his motion, Cope admits that he was informed of the prior representation but did not raise any objection to the Court. [R. 208 at 27]. Cope now claims that his defense was prejudiced because his attorney was constrained by the prior representation and as a result, did not cross-examine Smallwood effectively or completely. Where a petitioner raises ineffective assistance of counsel based on a conflict of interest, he must show that there was an actual conflict and that it adversely affected his attorney's performance. Cuyler v. Sullivan, 446 U.S. 335, 348 (1990). The "defendant must point to specific instances in the record to suggest an actual conflict, ... [and] must demonstrate that the attorney made a choice between possible alternative courses of action." United States v. Mays, 77 F.3d 906, 908 (6th Cir. 1996).

15

As has been pointed out previously, Cope's attorney effectively and aggressively cross-examined Smallwood in a professional manner. Cope has failed to point to any specific instances of an actual conflict and has failed to specify how his attorney may have alternatively cross-examined Smallwood. Cope's allegation of a conflict of interest is without merit.

As a final matter, the Court must address whether Cope is entitled to an evidentiary hearing. He is not. Section 2255 directs the Court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Thus, to receive a hearing, a petitioner must make allegations that raise at least some possibility of relief. "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Valentine v. U.S., 488 F.3d 325, 333 (6th Cir. 2007) (quoting Arredondo v. U.S., 178 F.3d 778, 782 (6th Cir. 1999)). An evidentiary hearing is also not required where "there is nothing in the record to indicate that [the] defendant would [be] able to prove his allegations at an evidentiary hearing." Amr v. U.S., 280 F. App'x 480, 485 (6th Cir. 2008). Cope has not identified any evidence, other than his own unsubstantiated allegations, that he could present to demonstrate that his claims have merit.

## IV. CONCLUSION

Accordingly, and for the reasons set forth above, it is recommended that the Defendant's Motion to Vacate, Set Aside, or Correct Sentence [R. 208] be DISMISSED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States

16

v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed March 30, 2011.



Signed By:
Edward B. Atkins  EBA
United States Magistrate Judge